UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANDRES GARCIA COSME,<br>     Plaintiff,<br><br>v.<br><br>MERRICK GARLAND, United States Attorney General; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security; UR JADDOU, Director of United States Citizenship and Immigration Services; TERRI ROBINSON, Direct of the National Benefits Center; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 22-1-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Andres Garcia Cosme ("Andres") came to the United States from Guatemala as an unaccompanied minor. A Massachusetts Probate and Family Court found that he was dependent on the Commonwealth of Massachusetts for his care and protection, that his custody continued under the jurisdiction of the court, and that reunification with his parents was not viable and not in his best interest. Andres filed a Form I-360 requesting a Special Immigrant Visa. The United States Custom and Immigration Services (USCIS) denied his petition. His administrative appeal was denied as well, causing him to seek relief in this Court.

Because the Court finds that the USCIS decision was arbitrary and capricious and not in conformity with the law in that it relied on factors not required by Congress, the Court DENIES the Defendants' Motion to Dismiss. ECF No. 8.

**FACTS**

Andres Garcia Cosme is a native of Guatemala who entered the United States as an unaccompanied minor in November 2015. In June 2018, he submitted an equity petition in the Bristol County (Massachusetts) Probate and Family Court ("State Court") seeking a determination about his care and custody. In an adjudication before Andres' 21st birthday, the State Court found that Andres was "dependent upon the Commonwealth of Massachusetts for his care and protection and this custody continues under the jurisdiction" of the state court. ECF No. 9 at 94-96. The State Court also held that reunification of Andres with his parents was not viable because of the neglect and abandonment by his mother, and it was not in Andres' best interest to return to Guatemala. *Id.*

Andres then submitted a Form I-360 petition requesting the benefit of a Special Immigrant Visa. USCIS issued a Request for Evidence, requesting further proof of his eligibility for relief, specifically that Andres provide "some form of placement, supervision, or services in connection with the finding of dependency." ECF No. 9 at 64-65. Andres responded, submitting a Memorandum in Support of Form I-360 arguing that USCIS could not second-guess the State Court and relitigate a determination already made. The Director of the National Benefits Center ("Director") denied his petition. Andres appealed that decision and filed a Form I-

290B, Notice of Appeal or Motion, with USCIS. The USCIS denied his appeal. Andres then filed this Complaint for injunctive and mandamus relief. ECF No. 1. USCIS filed a Motion to Dismiss. ECF No. 8. Andres objected. ECF No. 10.

**STANDARD OF REVIEW**

Along with the standard review of a Rule 12(b)(6) motion, the Court must review the USCIS's decision under the Administrative Procedure Act, 5 U.S.C. § 702.

A reviewing court must only set aside agency action, findings, and conclusions if they are "found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law [or] contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2). "When the issue is whether the agency followed the requisite legal procedure, our review is limited, but exacting." *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 116 (1st Cir. 2002) (citing *Natural Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*, 606 F.2d 1031, 1045, 1048–49 (D.C. Cir. 1979)). We review only to determine whether "statutorily prescribed procedures have been followed." *Id.*

A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Finally, in analyzing the agency's decision, a court may not substitute its judgment for that of the agency, even

if the court would have otherwise reached a different conclusion. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). Reversal is thus appropriate only where "a reasonable factfinder would have to" reach a contrary conclusion. *Overton Park*, 401 U.S. at 416.

## ANALYSIS

Special Immigration Juvenile ("SIJ") status is a "protective classification designed by Congress to safeguard abused, abandoned, or neglected alien children who are able to meet its rigorous eligibility requirements." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 158 (3d Cir. 2018); 8 U.S.C. §§ 1101(a)(27)(J) and 1154(a)(1)(G) ("Act"). "The protections afforded to children with SIJ status include an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents ("LPR"), exemption from various grounds of inadmissibility, and robust procedural protections to ensure their status is not revoked without good cause." *Id.*

The law defines SIJ status to mean an immigrant who, inter alia, "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States and whose reunification with both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J). The child must then receive

approval from USCIS and the consent of the Secretary of Homeland Security to obtain the status. 8 U.S.C. § 1101(a)(27)(J)(i-iii). When a state court decides that a child is dependent on the court that finding is "evidence that the request for SIJ status classification is bona fide." USCIS Policy Manual, vol. 6 pt. J ch. 2 (D).

The applicable section of the statute states:

(J) an immigrant who is present in the United States—

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--
> (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
> (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

8 U.S.C. § 1101(a)(27)(J)

The Court breaks down the relevant parts of this section to make clear its analytical path to determine a SIJ status review. The Court reads the statute as follows:

1. An immigrant who is present in the United States is eligible for SIJ status who has been,

   A. declared dependent on a juvenile court located in the United States
   
   OR
   
   B. placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States,"
   
   AND
   
   C. whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law
   
   AND

2. for whom it has been determined in . . . judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of . . .;

   AND

3. in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status.

Here, the State Court determined that Andres was a minor dependent on the juvenile court for his care and custody. Thus, the Court Order met the 1.A requirement and could skip a consideration of the 1.B. scenario in light of Congress' use of "or" as a conjunction to link alternatives. Moving on to 1.C, the State Court determined that his parents had abandoned him. Thus, 1.C above was fulfilled. Finally, the State Court found that it would not be in Andres' best interest to be returned to Guatemala, fulfilling step 2. ECF No. 9 at 94-96. The State Court concluded that Andres met all the statutory requirements for SIJ status. 8 U.S.C. § 1101(a)(27)(J).

Andres' process hit a roadblock when the Secretary of the Department of Homeland Security ("Secretary") exercised her discretion and denied him SIJ status under section 3 above. While the statute does require the Secretary to consent to the

grant of SIJ status, it does not allow the Secretary to exercise that consent arbitrarily, or by imposing requirements specifically not required by statute. The Court finds that that is what happened in Andres' case.

The Director decided that Andres "did not meet his burden of showing that the court provided some form of relief to protect [him] from parental abuse, abandonment, supervision, or services in connection with the finding of dependency." ECF No. 9 at 4. The statute, however, makes no such requirement. It does not require a petitioner to bear the burden of proving BOTH 1.A and 1.B above, with the key word "or" making it unambiguous that a petitioner only needed to prove one of the two conditions. The State Court order reflected that Andres proved that he was dependent on the State Court. And when he appealed the initial denial, the Secretary denied him again, this time because he did not establish that "his primary purpose in seeking the court decree was to obtain relief from parental abuse, neglect, abandonment . . . ." ECF No. 9 at 5. Again, this burden of "primary purpose" was not contemplated by Congress and inappropriately added to the statutory requirements.

The Court finds that Andres appropriately alleged that the Secretary's rejection of his SIJ status was arbitrary and capricious because it "relied on factors which Congress ha[d] not intended it to consider." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Therefore, Andres has stated a plausible claim upon which relief can be granted and the Court DENIES Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). ECF No. 8.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
Chief Judge
United States District Court

August 5, 2022